Irving E. Dickman v. Commissioner.
Dickman v. Commissioner
Docket No. 83250.
United States Tax Court
T.C. Memo 1962-119; 1962 Tax Ct. Memo LEXIS 191; 21 T.C.M. (CCH) 633; T.C.M. (RIA) 62119; May 18, 1962
*191 Leonard Bailin, Esq., 1472 Broadway, New York, N. Y., for the petitioner. William F. Chapman, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined a deficiency in petitioner's income tax for the calendar year 1956 in the amount of $2,032.60. The issues for decision are: (1) Whether petitioner failed to report in the year 1956 income from his law practice in the amount of $5,800. (2) Whether petitioner is entitled to deduct as ordinary and necessary business expenses interest in the amount of $155.85, automobile expenses of $1,035.94, entertainment expenses of $500, and general expenses of $225. (3) Whether petitioner is entitled to itemized deductions of $1,438.57 or is limited to the standard deduction which respondent allowed in the amount of $1,000. Findings of Fact Petitioner, a resident of Wantagh, Long Island, filed an individual income tax return for the year 1956 with the district director of internal revenue at Brooklyn, New York. Petitioner was admitted to practice law in June 1949 and during the year 1956 was engaged in practice with offices at 16 Center Street, Bellmore, Long Island, *192 and at 135-39 Northern Boulevard, Flushing, Queens County. During the year 1956 petitioner's home was approximately 2 miles from his Bellmore office, and this office was approximately 27 miles from his Flushing office. On 5 weekdays and occasionally on Saturdays petitioner would drive from his home to his Bellmore office where he would open his mail and transact any necessary business occasioned thereby. He would then drive either to Court if he were to appear in Court that day, or to his Flushing office. Petitioner usually spent the major portion of the day in his Flushing office, and returned in the afternoon to his Bellmore office where he arranged appointments with clients who lived in that vicinity for the latter part of the afternoon. On rare occasions he would see a client at his Bellmore office in the evening. As of the beginning of the year 1956 petitioner owned a 1956 model Mercury automobile which he traded in late October 1956 for a 1957 Mercury. The total cash delivery price of the 1957 Mercury was approximately $4,500 and at the time of the trade petitioner had a balance owing of $2,251.88 on his 1956 Mercury. Under the trade, petitioner was allowed a price for his *193 1956 Mercury sufficient that he did not make any cash payment for the 1957 automobile but did finance a balance of $3,550 on the 1957 Mercury. During the year 1956 petitioner made monthly payments of $100 including principal and interest to the Security National Bank, which had financed the cars for him. The interest rate for the financing was 6 percent on the unpaid balance. The 1956 or 1957 Mercury was the only automobile owned by petitioner, and his wife did not own an automobile and did not drive his automobile. Petitioner had two small children during the year 1956 and at times he used his automobile to drive his wife and children to places they wished or needed to go. During the year 1956 petitioner maintained three bank accounts: a personal account, a regular business account, and an account with the Federation Bank and TrustCompany, New York, New York, denominated, "Special Acct." Petitioner deposited into his special account escrow funds, exchanges, collections for clients, and similar amounts of collections which were not all to be retained by him as fees. During the year 1956, petitioner deposited into his escrow account a total amount of $30,483.74. [1] During the year *194 1956 petitioner transferred $5,800 from the special account to his personal account. Of the total deposits made in 1956 in petitioner's special account, $19,636.57 was transferred to clients, although portions of this amount were not transferred in the year 1956; $4,117.45 of the amounts deposited in the escrow account in 1956 was used for reimbursement of expenses and payment of professional fees for clients, although all such amounts were not expended in the year 1956. Of the amount deposited in the special account in 1956, $460 still remained therein as of June 1961. Of the amount deposited in the special account in 1956, $5,151.81 [2] was transferred by petitioner to income, $4,482.90 of the amount being transferred to income by petitioner in 1956, and $668.91 in subsequent years. *195 During the year 1956 petitioner at times entertained clients at restaurants at luncheon or dinner and at times in his home. Petitioner kept a set of books in which he recorded income and expenses. These books show expenditures of $570.03 for entertainment expense during the year 1956. All of the items shown in this account, except one, are in even dollar amounts and represent amounts for which petitioner cashed checks and retained the cash in the amount he estimated he would use for business entertainment. On many days petitioner made telephone calls outside of his office, gave a gratuity to a messenger who brought something to his office, and paid carfare to go to some appointment. Petitioner's telephone expense as shown by his business books of account for the year 1956 was $548.01. Petitioner made a $75 payment in 1956 to the Wantagh Jewish Center and a payment of $25 to the Federation of Jewish Philanthropists, and in addition made some smaller contributions to other organized charities such as the Red Cross. During the year 1956 petitioner paid interest of $400.19 to the Dry Dock Savings Bank and paid real estate taxes in the amount of $308.63. Petitioner purchased some *196 items in New York City and on such purchases was charged a sales tax. Petitioner during 1956 made a loan from the First National City Bank of New York on which he paid interest of $71.40. During the year 1956 petitioner made payments of $136.80 on a hospital insurance plan. He paid $38.80 on a health policy with the Metropolitan Casualty Company and a $25 dentist bill. During the year 1956 petitioner suffered from an asthmatic condition which required constant medication. For this he used a drug known as tedral and isuprel which he purchased for cash at various drugstores. Petitioner was required to take this drug in such quantities that it would amount at times to as much as a dollar a day for the medication. Petitioner on his income tax return reported total receipts from his profession of $12,612.26 and net profit therefrom of $3,868.54. The following were among the business expense deductions claimed: Interest on business indebtedness
$155.85
Depreciation on automobiles (10 months
on 1956 model and 2 months on 1957
model)
792.70
Automobile expense
964.88
Automobile insurance
313.71
Entertainment and travel
770.03
General expense
225.00
Respondent *197 in his notice of deficiency disallowed the claimed deductions for interest and for general expenses and disallowed $500 of the claimed deduction for entertainment and travel and one-half of the claimed expenses for automobile depreciation, automobile expenses and insurance with the explanation that these claimed deductions were disallowed for "the reason that no competent evidence or appropriate information was submitted in substantiation thereof." Respondent increased petitioner's receipts from his profession by $5,800 with the explanation that "it has been determined that gross receipts from business were understated on your return for the year 1956 in the amount of $5,800.00." Petitioner on his income tax return itemized his deductions and claimed deductions as follows: Contributions
$ 200.00
Interest
424.69
Taxes
423.63
Medical expenses
390.25
$1,438.57 The item of medical expenses consisted of the claimed cost of drugs of $294 with a 1 percent of adjusted gross income decrease of $39.09 leaving a net of $254.91, and other medical expenses of $252.60 making a total of $507.51 from which was subtracted 3 percent of adjusted gross income as shown on the *198 return or $117.26, leaving a net of $390.25 claimed as a deduction. Respondent disallowed the itemized deductions claimed by petitioner with the explanation that the disallowance in full was for lack of adequate substantiation, and in lieu of the itemized deductions the standard deduction of $1,000 was substituted Ultimate Facts Petitioner expended total amounts during the year 1956 for operating his automobile and paid automobile insurance as shown on his return and incurred depreciation on his automobiles in the amounts shown thereon. Petitioner paid interest in 1956 on loans to finance his automobiles in the amount of $155.85. Petitioner's use of his automobile was 75 percent for business purposes, and he is entitled to deduct as business expenses 75 percent of the interest paid by him on the automobile loans, 75 percent of the automobile depreciation incurred in the year 1956, and 75 percent of the amounts expended in that year for automobile expenses and insurance. In addition to the $270.03 allowed by respondent to petitioner as a deduction for business entertainment and travel, petitioner expended $100 and is entitled to a total deduction of $370.03 for business entertainment *199 and travel expenses. Petitioner is entitled to a deduction of $100 for general business expense. Petitioner had unreported receipts from his profession of $1,786.82 represented by amounts properly chargeable to income which were originally deposited in his special account and not thereafter during the year 1956 taken into his income account. Petitioner is entitled to itemized deductions for contributions in the amount of $150, interest of $471.59 plus 25 percent of $155.85 of interest paid on the automobile loan which is not allowable as a business expense, and a deduction for taxes of $333.63. Petitioner expended for drugs in the year 1956 the amount of $294 and, after a reduction of this amount by 1 percent of adjusted gross income determined with the additions and adjustments herein found, is entitled to add the remainder to medical expenses of $200.60 to arrive at total medical expenses which are deductible to the extent that they exceed 3 percent of petitioner's adjusted gross income with the additions and adjustments as determined herein. Opinion The issues here involved are entirely factual and arise because of the lack of precision of explanation contained in the *200 books and records kept by petitioner. Substantial portions of the books which petitioner kept were introduced in evidence in this case, and with minor exceptions, show explanations for the receipt and disbursement of the amounts received and disbursed by petitioner. The difficulty arises because the explanations are not in all instances adequate to indicate clearly whether a receipt of an item was a receipt of income by petitioner or an item which petitioner received as agent or attorney for a client, and the explanations of items of deductions are inadequate to indicate clearly whether the deduction is properly chargeable as a business expense or is in fact a personal expenditure. One of the items that is not shown on petitioner's books is the interest paid with respect to the loan on petitioner's automobile which was used partially for business purposes. However, the evidence shows that as of October 30, 1956, when petitioner traded his 1956 Mercury for a 1957 Mercury, there was a balance owing on the 1956 Mercury of $2,251.88 and that after the trade, the balance owing on the new car was $3,550. Petitioner testified that he had a special arrangement with the dealer from whom *201 he purchased the automobile to trade cars every year and to have the car financed through the Security National Bank in a balloon note along with the cars financed for the salesmen and employees of the automobile company, and that he paid $100 a month on the note which included a payment of 6 percent interest on the unpaid balance due on the automobile. Considering that the amount still owed on petitioner's 1956 automobile after 1 year of payments was $2,251.88 and that after the trade the balance due on his new automobile was $3,550, we think the evidence supports petitioner's position that his interest payment with respect to the automobiles was at least $155.85 in the year 1956 as claimed on his return. The balance of the automobile expenses is itemized in petitioner's books; and respondent apparently does not contest the amounts thereof or the amount of depreciation on the automobiles, but determined that the automobiles were used only 50 percent for business purposes and, therefore, disallowed one-half of the claimed deduction. Petitioner testified that he rarely used his car for personal reasons and estimated that only 2 to 3 percent of his use of his car was for personal reasons. *202 He did, however, testify that on the 5 weekdays and occasionally on Saturdays, he drove from his home each morning to his Bellmore office and back from his Bellmore office to his home in the evening, that his wife did not drive an automobile, and his automobile was the only one owned by the family, that he had two small children, and that on occasions on his way to his Flushing office, he would drive his wife and two children by to visit her parents. Apparently because of a reference made by petitioner to marketing in his testimony, he drove his wife and children to stores occasionally. For these reasons and bearing heavily against petitioner because of his failure to keep precise records of his business and personal use of his automobile, we have determined that his automobile was used 75 percent for business and 25 percent for personal purposes, and that the deduction should be computed accordingly. Petitioner claimed as entertainment expense the entire amount shown on his books in this category and $200 additional which he testified was his estimate of entertaining at home. Petitioner's only explanation of the use of the amounts charged on his books as entertainment was that he *203 used the amounts to entertain clients and prospective clients primarily at lunches and dinners in restaurants. He estimated that he entertained in his home at least on the average of once a month and sometimes more often, and that the cost of such entertainment would range from $15 to $25. Petitioner was not very precise as to who was entertained at his home except he did make reference to several occasions when he entertained a mortgage broker and persons whom this mortgage broker brought with him which resulted in references of individuals to him for closing upon the purchase of houses. We feel that petitioner did incur some expenses for entertainment and travel in addition to the $270.03 allowed by respondent but because of the lack of more definiteness with respect to the exact expenditure of funds for this purpose have estimated the additional amount to be $100. The deduction claimed by petitioner for miscellaneous expenses which included such items as gratuities and telephone calls made outside of his office, we have allowed only to the extent of $100 since we feel that in view of the amount of the telephone expense included in petitioner's business expenses which was not disallowed *204 by respondent, and the testimony with respect to the amount of driving which petitioner did of his automobile for business purposes, that $100 for miscellaneous expenses of this nature is more nearly accurate than the $225 estimated by petitioner. The evidence with respect to what portion of the amounts deposited in the special account should be added to petitioner's reported income is far from satisfactory. Petitioner introduced in evidence an exhibit agreed to by respondent which accounted for the major portion of the amounts deposited in 1956 in this fund, and as set out in our findings $19,636.57 was ultimately transferred to clients and $4,117.45 was ultimately paid as reimbursement of expenses and professional fees, leaving $460 remaining undisbursed in the account in June 1961. The other items as accounted for by petitioner were $785 which petitioner conceded was improperly omitted from income in 1956, $134.51 which petitioner was unable to explain, and $5,145.81 which petitioner showed was ultimately transferred to his income account. However, of this latter amount only $4,482.90 was shown as transferred to income in 1956. Respondent argues that no weight should be given *205 to this exhibit since the bank records offered in evidence by petitioner show that there were total disbursements from this special account in 1956 of $25,610.02, and that the total amount shown by petitioner as disbursed during the year 1956 was $19,534.14, which respondent contends leaves an unexplained amount of $6,075.88 which is in excess of the amount respondent has added to petitioner's income as disbursed from this account. Since substantially all of the amounts deposited in this account in 1956 are traced by petitioner to final disposition, we agree with petitioner that the mere charging out of these amounts through his personal account does not necessarily make the amounts constitute income. We have, therefore, made the best judgment that we are able to make from the records before us of the amount of unreported income from charge-outs from the special account to petitioner's personal account. There is nothing in the evidence to show why the amounts which were charged by petitioner in years subsequent to 1956 into income were not income to petitioner at the time received. He did transfer amounts in excess of the amount included in income in 1956 to his personal account in *206 that year. We have, therefore, arrived at our estimate of the amount omitted from petitioner's income from disbursements out of the special account in a way which we recognize is not wholly satisfactory but feel is approximately correct on the evidence before us. We have deducted from the amount of $30,483.74 deposited into the special account as shown by the bank statement, the amount of $28,696.92 composed of the items of $19,636.57 transferred to clients, $4,482.90 included by petitioner in income in 1956, $460 still remaining in the escrow account in June 1961, and $4,117.45 paid as reimbursement of expenses and professional fees and have considered the difference of $1,786.82 to represent additional income to petitioner in 1956. This has the effect of considering as additional income to petitioner the amount of deposits which we have determined to have been made in the special account in 1956 in excess of the amount as computed by petitioner, the amounts shown by petitioner as taken into income in years subsequent to 1956, the $785 which petitioner admits was omitted from income in 1956, and the $134.51 which petitioner is unable to explain. With respect to the deductions claimed *207 by petitioner, evidence adduced at the trial showed a payment to the Dry Dock Savings Bank of interest in the amount of $400.19 which respondent conceded to be deductible and real estate taxes of $308.63 which respondent conceded to be deductible. In addition the evidence showed that petitioner, on August 23, 1956, negotiated a personal loan at the First National City Bank of New York in the face amount of $840 with respect to which there was a discount of $71.40. Petitioner testified that this discount was for interest and from this testimony and the statement of proceeds on a notation paper imprinted with the name of the First National City Bank of New York, we have determined that the evidence is sufficient to sustain petitioner's contention that this amount did represent interest on his personal loan and so have determined that the total interest paid by petitioner on his personal loans other than the automobile loan in the year 1956 was $471.59. This total is in excess of the amount of interest deduction claimed by petitioner on his return, and although the petition herein has not been amended to claim precisely the additional deduction as interest, petitioner does on brief claim *208 the amount and respondent has made no objection to the lack of formal amendment to the petition to claim this deduction. Petitioner's testimony is clear that he made a payment of $75 in 1956 to Wantagh Jewish Center and $25 to the Federation of Jewish Philanthropists. There is very little testimony to support the claimed $100 of miscellaneous charitable deductions. Petitioner testified that the various organized charities came by his office, and he felt compelled to make some contribution and specifically mentioned a contribution to the Red Cross. Since the evidence shows that petitioner made some contributions to organized charity, we have, on the basis of the evidence, determined this amount to be $50, and that petitioner is entitled to total charitable deductions of $150. We have found as an ultimate fact that petitioner is entitled to deduct interest in the amount of $471.59 plus 25 percent of $155.85 of interest paid with respect to his automobile which we have found unallowable as a deduction for business expense. Petitioner, in addition to deducting the $308.63 real estate taxes, deducted New York City sales taxes of $115. The evidence shows that petitioner purchased some *209 articles in New York City which were not delivered to his home and, therefore, paid sales tax on them. He ate some lunches in New York City. The evidence as to the amount of such purchases and meals is very general but since it does show some payment of New York City sales tax, we have, bearing heavily against petitioner for the failure of more precise proof, determined the amount to be $25 which when added to the $308.63, makes a total of $333.63 of taxes deductible by petitioner as itemized deductions. Another deduction claimed by petitioner which was disallowed by respondent was medical expenses. The evidence in this regard is more precise than with respect to some of the other items. On the basis of this evidence, we have found that petitioner expended in 1956, $294 for drugs and $200.60 for other medical expenses and have further found that after the discount of 1 percent of adjusted gross income computed with the additions and adjustments determined herein, the remaining amount of the expenditure for drugs plus the amount of $200.60 represents an allowable medical expense deduction to petitioner to the extent that the total exceeds 3 percent of petitioner's adjusted gross income *210 computed with the additions and adjustments ad determined herein. Decision will be entered under Rule 50. Footnotes
1. The amount deposited in 1956 in the special account is shown on the analysis portion of petitioner's exhibit 5, which respondent agreed to as being a correct analysis of the special account, to be $30,457.93. Respondent, on brief, states this amount to be $30,483.74 as shown by the addition of the items listed under deposits on the bank statement of this special account, also a part of exhibit 5. The figure of $30,483.74 represents an addition of the deposits for the year 1956 as shown on the bank statements after making adjustments for corrections of the errors as also shown on that statement. ↩
2. Petitioner's exhibit 5 shows this total as $5,145.81, but a total of the individual figures is in the amount of $5,151.81.↩